IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

NANTICOKE LENNI-LENAPE TRIBAL
NATION,

                    Plaintiff,          Civil No. 15-5645 (RMB/JS)

        v.

CHRISTOPHER S. PORRINO,
*Attorney General of New
Jersey, In His Official
Capacity*,

                    Defendant.

## **OPINION**

Plaintiff, the Nanticoke Lenni-Lenape Tribal Nation, claims the State of New Jersey unlawfully repudiated its recognition as an American Indian Tribe. This Opinion addresses whether certain documents designated by defendant are protected from discovery by the attorney-client and deliberative process privileges.[1] For the reasons to be discussed, defendant's privilege assertions are granted in part and denied in part.[2]

---

[1] The Court received defendant's Motion for Protective Order [Doc. No. 65] and plaintiff's response [Doc. No. 66]. The Court also reviewed defendant's documents <u>in</u> <u>camera</u>. The Court determined oral argument was not necessary. Fed. R. Civ. P. 78; L. Civ. R. 78.1.

[2] In addition to objecting to "deliberative material," defendant's privilege log also refers to "advisory" "consultative" and "Inter/Intra-Agency Advisory" material. The Court assumes these references are subsumed within defendant's deliberative process objection.

<u>Background</u>

The plaintiff is the Nanticoke Lenni-Lenape Tribal Nation. Plaintiff filed its complaint on July 20, 2015, its first amended complaint on October 19, 2015, and its second amended complaint on May 5, 2016. On October 27, 2016, the Honorable Renée Marie Bumb granted in part and denied in part defendant's motion to dismiss the second amended complaint. <u>See</u> <u>Lenni-Lenape v. Lougy</u>, C.A. No. 15-5645 (RMB/JS), 2016 WL 6393802 (D.N.J. Oct. 27, 2016). The case is now at the tail end of document discovery and depositions will commence after this motion is decided.

In a nutshell, plaintiff alleges the State of New Jersey recognized it as an official New Jersey tribe as early as 1982 and then repudiated the recognition. Plaintiff's argument is not derived from whole cloth. In 1982, the State Legislature adopted a concurrent resolution, "officially recognize[ing] plaintiff as an American Indian Tribe." <u>Nanticoke Lenni-Lenape Tribal Nation v. Hoffman ("Hoffman")</u>, 2017 WL 2919182 at *1 (App. Div. July 10, 2017).[3] After the resolution was passed, plaintiff received benefits under different federal statutes and programs based on

---

[3] Before this case was filed plaintiff filed essentially the same lawsuit in state court. The trial court granted defendant's motion to dismiss finding plaintiff's claims were barred because the state never enacted a statute expressly recognizing plaintiff as an American Indian Tribe. <u>Id.</u> The Appellate Division reversed the decision on July 10, 2017. At the present time plaintiff plans to proceed with its state and federal cases simultaneously.

New Jersey's recognition of plaintiff as an American Indian Tribe. Id. Plaintiff also relies upon the September 9, 1992 letter written by the New Jersey Director of Ethnic Affairs from the Office of the Governor, addressed to the General Manager, Indian Arts and Crafts Board, U.S. Dept. of the Interior, which states:

> Governor Florio has asked me to respond to your recent letter about the status of state-recognized Indian tribes in New Jersey.
>
> The New Jersey State Legislature … is the law-making body that is responsible for the legal recognition of Indian tribes. Formal recognition is accomplished by State Resolutions, which remain in effect until rescinded.
>
> To date, three tribes have been recognized…. [T]he Nanticoke Lenni-Lenape Tribe was recognized by the Senate in 1981.[4]

Despite this history, plaintiff argues the State backtracked when on December 14, 2001, the Director of New Jersey's Division of Gaming Enforcement ("DGE") wrote to the Indian Arts and Crafts Board and stated: "the State has not enacted any statute for the specific purpose of officially recognizing any Indian group as a tribe." The Director also wrote that New Jersey's resolutions do not "officially recognize" plaintiff as a tribe…. They do not demonstrate a legislative design to formally acknowledge a tribe's existence as a domestic independent nation

---

[4] Additional evidence plaintiff relies upon is summarized in the Appellate Division's Hoffman decision. See 2017 WL 2919182, at **1-3; see also 2016 WL 6393802, at **2-5.

with tribal sovereignty or to deal with the group in a special relationship or a government to government basis." As a result of the December 14, 2001 letter, plaintiff has lost benefits and recognition that it enjoyed for years. Plaintiff's subsequent efforts to get the State to change and modify its position were unsuccessful. Plaintiff then resorted to the state and federal courts for relief.

The Honorable Renée Marie Bumb's October 27, 2017 Opinion granting and denying in part defendant's motion to dismiss ruled plaintiff presented two viable claims. First, plaintiff may proceed on its claim it was denied procedural due process. The Opinion noted:

> In this case, Plaintiff has alleged that no process whatsoever was provided prior to the loss of their property interest…. Simply put, as alleged by Plaintiff, one day they were a state-recognized tribe (and had been for decades), and the next day—with the swipe of pen and an absence of due process—they were not.

2016 WL 6393802, at *13. Second, Judge Bumb ruled plaintiff could proceed on its equal protection claim.

> Here, Plaintiff has alleged they were targeted for the revocation of their state recognition by Defendant because of a stereotypical belief concerning Native Americans and their gaming rights…. Their conversations with Defendant concerning this decision appear to have irrationally focused not on whether the Defendant was proper in adopting an about-face on their state recognition, but rather on whether state recognition would give the tribe a pathway to gaming…. Viewed in the light most favorable to Plaintiff, Plaintiff has stated a cause of action for violation of its equal protection rights.

4

Id. at *15. Obviously, the Court's ruling frames the scope of permissible discovery in the case. Fed. R. Civ. P. 26(b)(1)("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]").

Turning to the documents at issue, they cover two general subject areas. The first general area consists of analyses and discussion of proposed (but not adopted) legislation and its impact, inter alia, on whether plaintiff was or could be recognized in some capacity as an American Indian Tribe of New Jersey. The second general subject area consists of analyses and discussion of whether the State "officially recognized" plaintiff as an American Indian Tribe from New Jersey. Also included is some discussion of tribal gaming issues. Several types of documents are at issue including "Bill Analysis" with associated internal memos, various internal memos, legal memos, draft letters to third parties, emails and miscellaneous documents.

Defendant makes several arguments as to why its documents are not discoverable: (1) the documents are not relevant under Fed. R. Civ. P. 26(b)(1); (2) the discovery is not proportional; (3) the documents are protected by the attorney-client privilege, and (4) the documents are protected by the deliberative process privilege. Defendant makes a separate

argument that its draft letters are irrelevant and privileged.

Not unexpectedly, plaintiff opposes defendant's relevance and proportionality arguments. Plaintiff also argues defendant's Gaming Division documents are not protected by the attorney-client privilege because the Gaming Division has no statutory role in state tribal recognition and, therefore, its communications were not made for the purpose of rendering legal opinions or analysis. In addition, plaintiff argues draft documents intended for production to third parties are not privileged.

<u>Discussion</u>

1.   <u>Relevancy and Proportionality</u>

Defendant's relevancy and proportionality arguments are rejected out of hand. As the parties know, Fed. R. Civ. P. 26(b)(1) provides that parties may obtain discovery regarding any non-privileged matter relevant to any party's claim or defense and proportional to the needs of the case. The documents at issue are unquestionably relevant to key issues in the case. The documents address and discuss New Jersey's tribal recognition history and the State's seemingly inconsistent positions. These topics are plainly relevant to plaintiff's procedural due process claim and its argument that defendant acted in an arbitrary and capricious manner. The documents also touch on the DGE's involvement in tribal recognition issues.

This topic is directly relevant to plaintiff's equal protection claim and plaintiff's contention that defendant relied on "pernicious racial stereotypes" when it developed policies related to plaintiff.

Defendant's relevancy objection is based on a false premise. Defendant essentially argues the only issue in the case is whether plaintiff was "officially recognized." Defendant further argues that since its internal documents cannot confer this recognition, they are irrelevant. ("Quite simply, internal memoranda and correspondence prepared by lawyers within the Attorney General's Office cannot constitute official State recognition of a putative Native American Tribe or the repudiation thereof." Defendant's Brief ("DB") at 9). Defendant, however, ignores plaintiff's procedural due process and equal protection claims that survived its motion to dismiss. Not only is the fact of plaintiff's recognition a relevant issue, but so too is the manner in which the State made the decision and why.

Defendant's argument that its "draft" letters and memos are irrelevant is also misguided. ("Quite simply, a draft letter prepared by a lawyer within the Attorney General's Office cannot constitute official State recognition of a putative Native American Tribe or have any bearing on the outcome of this dispute." DB at 16). For the reasons just stated, defendant is wrong. Draft letters certainly may bear on whether recognition

was granted and if not why not.

Defendant's proportionality objection also carries no weight as the relevant factors to consider favor plaintiff. The issues in the case are enormously important to plaintiff as they significantly impact plaintiff's livelihood. Further, the requested documents are not available from another source. In addition, the documents are relevant to core issues in the case. Further, there is no material burden or expense to defendant to produce the relatively small number of documents at issue since they have already been collected and are available to produce.

Having rejected defendant's relevancy and proportionality objections, whether defendant's documents should be produced depends on whether they are privileged and, if so, if the privilege should be pierced.

2.  Attorney-Client and Deliberative Process Privileges

The gravamen of defendant's objections is that its documents are protected the by the attorney-client and deliberative process privileges. The Court will proceed to discuss the general principles that apply to these privileges. The Court will then apply the principles to defendant's documents to decide if they are privileged.

A.  Attorney-Client Privilege

The burden of establishing that a document is privileged is on the party asserting the privilege. Torres v. Kuzniasz, 936 F.

Supp. 1201, 1208 (D.N.J. 1996). The attorney-client privilege protects communications when: (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client. Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994).

The attorney-client privilege does not apply just because a statement was made by or to an attorney. Thus, the mere fact that a lawyer authors or receives a document does not prove it is privileged. Spiniello Companies v. Hartford Fire Insurance Company, C.A. No. 07-cv-2689 (DMC), 2008 WL 2775643, at *2 (D.N.J. July 14, 2008)(simply copying or "cc'ing" an attorney on an email is not enough to establish a privilege); Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D. Pa. 1997)("What would otherwise be routine, non-privileged communications between corporate officers or employees

transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda"). This makes perfect sense because otherwise parties could facilely avoid producing relevant discovery by simply copying an attorney on every document. See Orion Corp. v. Sun Pharmaceutical Industries, Ltd., C.A. Nos. 07-5436 (MLC), 08-5545 (MLC), 2010 WL 686545, at *8 (D.N.J. Feb. 22, 2010)("Because the privilege may be employed to obstruct the search for truth, the privilege is not absolute and care must be taken to insure the privilege is not abused").

The attorney-client privilege applies to communications and not facts. Rhone-Poulenc Rorer, Inc., 32 F. 3d at 862 ("The client … may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.")(citation and quotation omitted); see also La Mun. Police Employees Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 305 (D.N.J. 2008)("In all instances, the facts underlying any given communication remain discoverable"); Upjohn Co. v. U.S., 449 U.S. 383, 395-96 (1976). Instead, "[t]he [attorney-client] privilege protects only those disclosures - necessary to obtain informed legal advice – which might not have been made absent the privilege." Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1423-

24 (3d Cir. 1991) (citation, quotation and emphasis omitted);
see also Fisher v. United States, 425 U.S. 391, 403 (1976).

An attorney who is not performing legal services or relaying legal advice and who performs non-legal duties does not qualify for the privilege. Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 550-51 (1997); Fredericks v. Atlantic City Bd. of Educ., C.A. No. 08-3082 (RBK/JS) 2010 WL 3429605, at *5 n.6 (D.N.J. Aug. 26, 2010)(not infrequently lawyers are engaged to perform non-legal services); see also Ellerstein v. Herman Body Co., 23 N.J. 348, 352 (1957), adopting the lower Court's ruling that if an attorney "is engaged for the rendition of work which inherently is not the practices of law and his knowledge of law may along the line come into play, the engagement is for non-legal work." This is true even if litigation may arise from the subject of the attorney's activities. Payton, 148 N.J. at 551.

B.    Deliberative Process Privilege[5]

---

[5] In order to assert the deliberative process privilege three procedural requirements must be satisfied. First, there must be a formal claim of privilege by the head of the department which has control over the matter. Second, the responsible agency official must provide specific reasons for asserting confidentiality over the government documents. Third, the government documents sought to be protected must be identified and described. U.S. v. Ernstoff, 183 F.R.D. 148, 152 (D.N.J. 1998)(citations omitted). The Certification of B. Stephan Finkel, Director of Legislative Affairs in the Attorney General's Office [Doc. No. 65-5], as well as defendant's privilege log, satisfies these procedural requirements.

When a plaintiff's claim is based on federal law, like here, the issues concerning privilege are governed by federal common law. See Fed. R. Evid. 501. Federal common law recognizes the deliberative process privilege. U.S. v. Pechiney Plastics Packaging, Inc., C.A. No. 09-5692 (PGS), 2013 WL 1163514, at *13 (D.N.J. March 19, 2013). The deliberative process privilege protects communications that are part of the decision-making process of a government agency. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-152 (1975). The privilege "prevent[s] injury to the quality of agency decisions which could result from premature or indiscriminate disclosure of deliberations comprising part of a process by which government decisions and policies are formulated." Delaware Riverkeeper Network v. Delaware River Basin Com'n, 300 F.R.D. 207, 210 (D.N.J. 2014)(citation and quotation omitted).

A party's assertion of the deliberative process privilege requires a two-step review in the district court. First, it must be decided whether the communications at issue are privileged. Second, the court must balance the parties' interests. Redland Soccer Club, Inc. v. Department of Army of U.S., 55 F.3d 827, 854 (3d Cir. 1995). The initial burden of showing the privilege applies is on the government. Id. Further, like other executive privileges, the deliberative process privilege should be narrowly construed. Id. at 856.

In order to be privileged, the material sought to be protected must be pre-decisional and deliberative. Abdelfattah v. United States Dept. of Homeland Sec., 488 F.3d 178, 183 (3d Cir. 2007). Pre-decisional documents "must concern an anticipated agency decision and have been generated prior to the actual decision being reached; it cannot involve a communication concerning the decision made after the decision has already been adopted." Delaware Riverkeeper, 300 F.R.D. at 211 (citation and quotation omitted). In order to be deliberative a document must contain "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Id. A document that reflects the writer's personal opinions rather than the policy of the agency is also protected. Otherwise, disclosure could inaccurately reflect or prematurely disclose the views of the agency rather than a personal opinion. Id. In sum, therefore, "[a] document is predecisional if it was drafted to aid a decision maker in reaching his or her decision, and it is deliberative if it reflects the give[]-and-take of the consultative process." Qatanani v. Department of Justice, C.A. Nos. 12-4042(KSH)(CLW), 12-5379 (KSH)(CLW), 2015 WL 1472227, at *8 (D.N.J. March 31, 2015).

The deliberative process privilege is not absolute. Redland Soccer Club, 55 F.3d at 854. The privilege does not protect

factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable. Id.; see also U.S.S.E.C. v. Sentinel Mgmt. Grp., Inc., No. 07 C 4684, 2010 WL 4977220, at *3 (N.D. Ill. Dec. 2, 2010)(internal citations omitted)("Discussion of objective facts as opposed to opinions and recommendations, generally is not protected by the deliberative process privilege.") However, "[w]hile factual information is generally not exempt from disclosure, in certain circumstances, purely factual material is presented in a manner such that its release in itself would compromise the deliberative process." Novo Labs v. F.T.C., C.A. No. 80-1989, 1981 WL 2214, at *4 (D.D.C. July 21, 1981)(citing Mead Data Central Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977)); Montrose Chem. Corp. v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974); see also F.T.C. v. Hope Now Modifications, LLC, C.A. No. 09-1204 (JBS/JS), 2011 WL 2634029, at *3 (D.N.J. July 5, 2011)("[P]urely factual information must be segregated from deliberative material and produced unless it is inextricably intertwined with the privileged material or would itself reveal the deliberative process")(citation and quotation omitted).

As noted, the deliberative process privilege is qualified. Redland, 55 F.3d at 854. If the privilege applies the party requesting documents may attempt to show that its need for the

documents outweighs the government's interest in non-disclosure. Relevant factors to consider are (1) the relevance of the requested documents, (2) the availability of other evidence, (3) the seriousness of the litigation and issues involved; (4) the role of the government in the litigation; and (5) the potential for inhibiting candor by government employees resulting from the disclosure. Id.[6]

3. Defendant's Documents

For ease of analysis the Court will address defendant's documents by category. These are: (1) Bill Analyses, (2) legal memos, (3) draft letters to Meridith Stanton with associated cover memos, (4) internal memos, and (5) miscellaneous.

A. Bill Analyses

In the 2001-2002 time period several bills were proposed to address Indian issues. They include Assembly Bill ("AB") No. 2957, introduced on November 9, 2000, AB No. 2292, introduced on May 9, 2002, and Assembly Substitute No. 2292, introduction date unknown. The content and impact of these Bills were discussed in memos exchanged between and amongst personnel from the DGE and various personnel in the Department of Law and Public Safety, including Legislative Analysts, Assistant Attorney Generals and

---

[6] Other factors courts consider are: (1) the interest of the litigant, and ultimately society, in accurate judicial fact finding; (2) the presence of issues concerning alleged governmental misconduct; and (3) the federal interest in the enforcement of federal law. U.S. v. Irvin, 127 F.R.D. 169, 173 (C.D. Cal. Aug. 9, 1989).

the Attorney General. The bulk of the bill analyses were done by DAG Beverly Tanenhaus, Esquire, from the DGE. The Court finds these documents are protected from discovery by the deliberative process privilege.[7]

The focus of these documents is whether the Department of Law and Public Safety should support or oppose the proposed legislation. The documents are protected by the deliberative process privilege because: (1) the documents are pre-decisional and deliberative in the sense that they address whether the Department should support or oppose the proposed legislation, a decision that had not yet been made, (2) the documents involve advisory opinions and recommendations about how the Department should act, and (3) the documents do not contain primarily factual material, and to the extent facts are mentioned they are already in the record.

The Court disagrees with plaintiff that its interest in production of these documents outweighs defendant's interest in non-disclosure. Recognizing that the deliberative process privilege is qualified, and applying the relevant factors to consider, the Court does not find that plaintiff's interests outweigh those of the State. There is no question this is a significant case with important implications for plaintiff.

---

[7] Although plaintiff concedes defendant's bill analysis documents are protected by the deliberative process privilege (Plaintiff's Brief ("PB") at 13), the Court will nevertheless proceed to justify its ruling.

However, in the Court's judgment these documents are not materially relevant to the core issues in the case. The case focuses on the State's past legislative and executive actions. The case does not focus on proposed legislation that was not passed. The reasons expressed in the Department's documents for or against the proposed legislation will not, in the Court's judgment, have a material impact on the outcome of the case. Further, the State's justifications for opposing tribal recognition are mentioned in other produced documents. The cumulative discussion in the subject documents will not add material new information to discovery already produced.

The Court recognizes it could be argued the State's reasons for opposing certain legislation are relevant to its underlying motivation. Although this may be true, the State's analyses of proposed legislation is not directed to the crux of plaintiff's case which is that the State backtracked on its previous official tribal recognition. As to these documents, the State's interest in protecting its deliberative process outweighs plaintiff's interest in reviewing the documents. This is especially true given the importance of the bill analyses. "These bill comments inform whatever positon or course of action the Attorney General decides to take on a bill, or the legal advice the Attorney General might provide to the Office of the Governor's counsel to assist them in dealing with or advising

the Governor on pending legislation." Cert. of Finkel ¶8. Further, the bill comments "are a primary, critical source for the confidential deliberations undertaken by the Legislative Affairs Unit in devising an appropriate strategy or course of action in dealing with pending legislation." Id. ¶9.

The Court does not accept plaintiff's argument that since defendant's analyses addressed old proposed legislation that is no longer being considered, production will not have a chilling effect because no government employee can reasonably expect his/her communications will always be confidential. PB at 13. To the contrary, production of defendant's analyses could chill candid and frank communications that are necessary to an effectively run state government. While defendant's analyses may not remain confidential forever, a decision this Court is not addressing, the State's deliberations should not be produced while the issues they address are at the forefront of current events being actively litigated.

For these reasons, therefore, the State's interest in protecting its confidential deliberations outweigh plaintiff's interests in discovery concerning proposed legislation that was not passed. Therefore, defendant's documents analyzing proposed legislation is protected from discovery by the deliberative process privilege. The Court finds the following specific "bill analysis" documents are protected from discovery:

1. AG218 – 226 – May 22, 2001 "Bill Analysis" of AB 2957 prepared by DAG Tanenhaus and addressed to John Peter Suarez, Director, DGE.

2. AG317 – 327 – June 10, 2002 "Bill Analysis" of AB 2292 prepared by DAG Tanenhaus and addressed to Lori Dawes, Administrative Analyst.[8]

   B.   Legal Memos

At various times DAG Tanenhaus and Assistant Attorney General Lewis Scheindlin prepare lengthy legal memos addressing Indian gaming issues. The documents that fit into this category include:

1. AG175 - 187 – February 10, 2000 memo from T. Tanenhaus to Suarez re: Acquisition of Trust Land and Casino Gaming.

2. AG335 – 367 – June 13, 2002 draft memo from Tanenhaus to Mark J. Fleming, Deputy Chief Counsel, Office of the Governor re: Federal Acknowledgement of Indian Tribes.

3. AG385 - 412 – July 30, 2002 Final version of June 13, 2002 draft memo.

4. AG987 - 998 – September 13, 2011 memo from Lewis A. Scheindlin, Assistant Attorney General to Robert Hanna, Director Division of Law re: Recognition of Indian Tribes.

Although the listed legal memos are unquestionably relevant to issues in the case, they are classic attorney-client privileged documents that are not discoverable. The memos were prepared by lawyers for their clients for the purpose of providing legal opinions and advice. Further, the memos were

_____

[8] The internal memos that accompany these documents are addressed _infra_.

intended to remain confidential as evidenced by their limited distribution. The mere fact that privileged material is relevant and material is not enough in and of itself to justify piercing the attorney-client privilege. <u>Liberty International Underwriters Canada v. Scottsdale Insurance Co.</u>, C.A. No. 12-4934 (NLH/JS), 2015 WL 9480014, at *2 (D.N.J. Dec. 29, 2015). Under New Jersey law there are only three limited situations where the attorney-client privilege may be pierced, none of which apply here: (1) when the nature of the claim places the content of the communication "at issue"; (2) to protect an accused's constitutional rights; and (3) when the client "calls his attorney to the stand." <u>Id</u>. at 3.

Plaintiff argues its "highest priority in pressing discovery of the listed materials is to obtain access to communications involving the Gaming Division." PB at 7. Plaintiff argues the DGE's documents are not privileged because they were not prepared for the "purpose of securing a legal opinion, service, or assistance." Plaintiff argues:

> Communications with the Gaming Division regarding the Tribe's state recognition cannot possibly meet these standards because *the Gaming Division has no statutory role in state tribal recognition*…. The Gaming Division has no statutory responsibilities regarding tribal recognition, and could not have been requesting legal opinions, services, or assistance from its attorneys. Nor could the Division's communications have been "designed to meet [predominantly legal] problems" … with respect to the Tribe's state recognition status. Any communications about the Tribe that involved the Gaming Division were, on their face, *not* legal in

nature and thus *not* protected by the attorney client
privilege. (Emphasis in original).

PB at 8-9. Plaintiff believes the DGE's communications cannot be privileged because, "the Gaming Division has no proper role to play in state tribal recognition, or indeed in any tribal recognition, or indeed in any tribal business, unless and until a tribe seeks a casino license." PB at 9.

The Court disagrees with plaintiff. As to the legal memos listed above, it is unquestionably the case that the DGE's attorney provided legal opinions and advice to her client. The DGE is a division of the Department of Law and Public Safety headed by the Attorney General. Cert. of Finkel ¶3. As discussed <u>infra</u>, AG533 - 535 is not privileged. This memo confirms that the DGE's attorney advised the Attorney General and Governor with respect to various issues of Indian law. The DGE's attorney's client was not just the DGE, but also the Department of Law and Public Safety. After reviewing the documents at issue there can be no legitimate dispute they are "designed to meet problems which can fairly be characterized as predominantly legal." <u>La. Mun. Police Employees Ret. Sys.</u>, 53 F.R.D. at 306. The fact that the DGE did not have statutory authority to recognize an Indian Tribe is irrelevant to whether its attorney's legal analysis provided to the client is privileged. Also, the fact that the DGE's attorney was formally assigned to

the DGE did not bar her from doing legal work for other departments or divisions.

The attorney-client privilege is not pigeon-holed in the fashion plaintiff posits. The privilege analysis focus on the nature of the communication provided, not on the State's bureaucratic hierarchy. The State's attorney's legal analysis regarding a relevant Indian Tribe issue is privileged no matter what department, division or section the attorney works in. To the extent plaintiff argues the DGE had no legitimate interest in gaming issues, it is wrong. Whether Indian groups could legally establish gambling in New Jersey is certainly a relevant topic for the DGE to consider.

C.   Draft Letters to Meridith Stanton with Associated Cover Letters

On December 14, 2001, the Director of the DGE, Suarez, wrote to Meridith Stanton, Acting Director, Indian Arts and Crafts Board, Department of Interior, and responded to her letters asking to be advised whether New Jersey has any State recognized tribes as defined by the Indian Arts and Crafts Act of 1990 ("Act"), as well as the process for State recognition of Indian tribes, if any. The record reflects that at least four (4) draft versions of the December 14, 2001 letter were prepared. These documents include: AG200 - 202 (August 25, 2000), AG214 - 216 (April 23, 2001), AG233 - 234 (July 10, 2001)

and AG239 – 241 (November 20, 2001).[9] Plaintiff argues defendant waived its privilege as to draft versions of a letter intended to be sent to a third-party.

There is a split of authority as to whether draft versions of a privileged document eventually disclosed remains privileged or if the privilege is waived by the publication. Some courts hold that draft documents intended to be published are not privileged. <u>In re Grand Jury Proceedings</u>, 33 F.3d 342, 354(4th Cir. 1994)("[I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege.")(citation and quotations omitted); <u>United States v. Lawless</u>, 709 F.2d 485, 487 (7th Cir. 1983)("When information is transmitted to an attorney with the intent that the information will be transmitted to a third party …, such information is not confidential"); <u>In re Grand Jury Subpoena</u>, 204 F.3d 516, 521 (4th Cir. 2000)(no blanket privilege for drafts and related communications on information a client intends to eventually publish). These courts reason that if a draft was intended to be disclosed there is no expectation of confidentiality.

---

[9] The Court holds these draft letters are protected by the attorney-client privilege. The drafts were prepared by lawyers and include legal advice and opinions regarding State recognition of Indian groups. Thus, the Court must decide whether the State waived its privilege when the final December 14, 2001 draft was published.

Other Courts reach a different conclusion. See U.S. v. Schlegal, 313 F. Supp. 177 (D. Neb. 1970); Schenet v. Anderson, 678 F. Supp. 1280 (E.D. Mich. 1988). These decisions hold that a "privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties." Id. at 1284.

Although relevant precedent from this District is sparse, the issue was discussed in S.E.C. v. Teo, C.A. No. 04-1815 (SDW), 2009 WL 1684467 (D.N.J. June 12, 2009). In Teo the defendant sought to quash an injunction issued by the S.E.C. to their attorneys. One issue the Court had to decide was whether drafts of publicly filed documents were privileged. The Court ultimately adopted what appears to be the majority rule and held, "that any information contained in draft documents, communicated between an attorney and his/her client which were not revealed ultimately in a public filing is protected by the attorney-client privilege." Id. at *6. This Court agrees with Teo and the majority of courts that have addressed whether draft documents intended to be released to the public are privileged. The Court's holding encourages frank and complete communications between an attorney and a client. It is simply not the case that a client expects everything in a draft letter to be publicly released. The client and the attorney may not know what will be

publicly released until their draft document is finalized.[10]  As

noted in <u>Ciesla v. New Jersey Dept. of Health and Senior</u>

<u>Services</u>, 429 N.J. Super. 127, 141 (App. Div. 2012), "[b]y their

very nature, draft documents are preliminary and subject to

further revision." In addition, "[t]entative findings and

recommendations within [drafts] may be reconsidered, qualified,

supplemented, withdrawn, and even, in some instances, radically

changed to reflect entirely different conclusions." <u>Id</u>. The

Court agrees that, "[a] different rule would not … support the

purpose of the privilege which is to encourage free disclosure

of information by the client to the attorney." <u>Schlegal</u>, 313 F.

Supp. at 179; <u>see also</u> <u>Schenet</u>, 678 F. Supp. at 1280 ("[T]he

<u>Schlegal</u> rule encourages clients to disclose information freely

to their attorneys, and thus is most consistent with the purpose

of the attorney-client privilege."). Further, "[p]reliminary

drafts may reflect not only client confidences, but also the

legal advice and opinions of attorneys, all of which is

protected by the attorney-client privilege." <u>Id.</u> at 1284.

Based on the Court's ruling, therefore, the Court rejects

defendant's argument that all of its draft documents are

privileged. The Court also rejects plaintiff's argument that

defendant's privilege is waived as to all drafts documents

---

[10] The Court is not addressing a "sham" draft document where it
is known the document will be released but it is marked draft
solely to protect a privilege.

intended to be publicly released. The Court has carefully reviewed the numerous drafts of the Stanton letter and the final version that was sent on December 14, 2001. It turns out that essentially all of the information in the December 14, 2001 letter is contained in the earlier drafts. Therefore, relying on Teo and the leading Schlegal and Schenet cases, the Court rules that all of the draft Stanton letters are discoverable (AG200 – 202, 214 – 216, 233 –234, and 239 –241). These draft letters are discoverable because the information contained therein was publicly released in the December 14, 2001 final version of the letter that was sent to Stanton. These drafts shall be produced.

D.    Internal Memos

Given their importance, the Court will address each of the State's internal memos separately.

(1). December 7, 1999 Memo from J. Bender, AAG to J. Miller, Director, Division of Law (AG159 – 160)

This memo addresses a request from the Secretary of State asking whether the State "officially recognized" plaintiff as a tribe. The State claims the memo is protected by the attorney-client and deliberative process privileges. The Court agrees and disagrees in part.

For the most part this memo is simply a summary of historical facts regarding "the State record on recognition[.]" As noted, historical facts are not privileged. Redland Soccer

Club, 55 F.3d at 854. Further, the facts in the memo are easily segregated from the privileged material. See F.T.C., 2011 WL 2634029, at *3 (fact material that is severable from privileged information must be produced). Nonetheless, portions of the memo include privileged material. The first sentence of the second paragraph beginning with, "[t]he State record" reflects attorney advice and opinions. So too does the last two sentences of the paragraph beginning with, "[t]he actions" and ending with "Indian Tribes." In addition, the next to last paragraph of the memo beginning and ending with, "In responding … as Indian tribes," contains material protected by the deliberative process privilege as it discusses a proposed strategy for how to respond to the Secretary of State's inquiry. Thus, the State shall produce this memo and redact the designated material.

The State's interest in protecting its deliberations outweighs plaintiff's interest in reviewing the entire document. The State must know that its strategy decisions regarding important issues remain private. Otherwise, frank and candid discussions will be chilled which will be detrimental to the effective functioning of the State's departments and agencies. Further, the substance of the redacted material is not materially relevant to the underlying merits issues in the case. Thus, this memo shall be produced except for the noted material to be redacted.

### (2). February 14, 2000 Memo from Suarez to J. Furey, Executive AAG (AG174)

This memo addresses "tribal gaming issues relevant to New Jersey, "and attaches the privileged February 10, 2000 legal memo from Tanenhaus to Suarez (AG175 – 187). The State claims the memo is protected by the attorney-client and deliberative process privileges. The memo is privileged because it summarizes the legal opinions addressed in the attached privileged legal memo.

### (3). August 25, 2000 Memo from Tanenhaus to Suarez (AG198 – 199)

This memo attaches a draft response to Stanton's inquiry whether New Jersey officially recognizes plaintiff as a tribe and discusses the author's strategic thinking for the wording in the draft. The memo is protected by the attorney-client privilege as it addresses legal issues and advice and the author's opinions and strategy. The memo is also protected by the deliberative process privilege because it addresses how to respond to Stanton's inquiry. The memo does not have to be produced.

### (4). May 22, 2001 Memo from T. Auriemma, Deputy Director, DGE to K. Lyons (AG217)

This memo addresses AB-2957 and attaches the privileged May 22, 2001 legal memo prepared by Tanenhaus (AG218 - 226). Defendant claims this memo is protected by the attorney-client

privilege. For the same reasons the legal memo is privileged, this memo is also privileged.

> ### (5). November 19, 2001 Memo from Suarez to J. Holl, AAG (AG237 – 238)

This memo addresses a response to Stanton's inquiries and attaches the November 20, 2001 draft response. Defendant claims this memo is protected by the attorney-client and deliberative process privileges. The Court finds this memo is protected by the deliberative process privilege as it addresses how and when to respond to Stanton's inquiries. The State's interest outweighs plaintiff's interest in production of the memo because, <u>inter alia</u>, the memo does not address matters material to the merits of the case.

> ### (6). September 16, 2002 Memo from B. Hutcheon, AAG, Director, Legislative Affairs to D. Samson, Attorney General (AG421 – 422)

This memo addresses AB-2292. Defendant claims the memo is protected by the attorney-client and deliberative process privileges. The memo is not protected by the attorney-client privilege because it does not relay any legal advice or opinions. The Court agrees the bulk of this memo is protected by the deliberative process privilege as it addresses the State's deliberations regarding its position vis-à-vis proposed legislation AB-2292. However, as to most of the memo plaintiff's interest in disclosure outweighs the State's interest in confidentiality. This is true because for the most part the memo

summarizes historical facts. Although some of the writer's opinions are interspersed, they are inconsequential.

However, the Court finds the first paragraph on page 1 of the memo beginning and ending with, "[w]e want … the Department "shall be redacted. The Court finds the first paragraph on page two of the memo referring to a letter to Assemblywoman Watson-Coleman is not privileged. The Court finds the Department had no expectation of confidentially in a letter sent to an Assemblywoman, even if the letter addressed the State's reasons for opposing AB-2992. The only other portion of this memo that shall be redacted is the last paragraph beginning and ending with, "Assistant Governor's … to attend." The "To-From" portion of the memo shall also be produced.

> (7). November 25, 2002 Memo from Hutcheon to A. <u>Accurso, AAG in Charge of Litigation (AG464)</u>

This memo asks for an analysis of AB-2992. Defendant claims the memo is protected by the attorney-client and deliberative process privileges. This memo is protected by the attorney-client privilege because it seeks legal advice on an issue of concern to the Department of Law and Public Safety. The topic to be addressed is privileged because it may reveal the State's strategic thinking.

> (8). January 30, 2003 Memo from Mike Haas, DAG to <u>B. Hutcheon, AAG (AG500)</u>

This memo addresses the February 20, 2002 Affidavit of Mark M. Gould, plaintiff's Chairman. Defendant claims the document is protected by the attorney-client and deliberative process privileges. The document is protected by the attorney-client privilege as it addressees legal strategy for how the affidavit may be used in the future.

> (9). December 17, 2003 Memo from Auriemma to P. Josephsen, Director, Division of Law (AG533-535)

This memo addresses the assignment of responsibility for handling Indian law matters. Defendant claims the memo is protected by the attorney-client and deliberative process privileges. The Court disagrees. This memo merely addresses personnel issues and whether the DGE or the Division of Law should handle Indian law matters. The memo does not address legal advice or opinions or deliberative issues. Thus, this memo shall be produced.

> (10). June 12, 2012 Memo from Kathryn Winfree, Policy Analyst to Deborah L. Gramiccioni, Deputy Chief of Staff and Cabinet Liaison (AG1020 - 1021)

This memo addresses plaintiff's request to the Attorney General's office asking for assistance in obtaining recognition from the State of New Jersey. Defendant claims the document is protected by the attorney-client and deliberative process privileges. The document is not attorney-client privileged

because it was not written by, to or for an attorney seeking legal advice.

As to the deliberative process privilege, the issues is more complicated. Most of the memo addresses how the State should negotiate with plaintiff. This is classic deliberative process protected information that must remain confidential. However, other portions of the memo simply discuss background facts. This includes the first paragraph beginning and ending with "In March … the force of law", and the third and fourth paragraphs beginning and ending with, "[t]he federal government … of the State." These three paragraphs, as well as the "To-From" portion of the memo, shall be produced.

The first and second paragraphs on page two of the memo (AG1021) beginning and ending with, "This issue … casino rights," is arguably protected by the deliberative process privilege. However, the Court finds plaintiff's interest in disclosure of these paragraphs outweighs the State's interest in keeping the material confidential. Therefore, these paragraphs shall be produced. These paragraphs discuss the State's critical December 14, 2001 letter and touch on why it was sent. This issue goes to the heart of plaintiff's case. Plaintiff is entitled to get to the bottom of why, in its view, the State backtracked on its official recognition. In comparison to the State's discussion regarding its settlement and mediation

strategy, the Court does not find the production of these paragraphs will materially chill candid government communications. To be clear, the Court is not directing that the portions of this memo discussing settlement strategy be produced. Discussions of this ilk are simply too important to the effective functioning of State government to be released. Only the cited portions of this memo along with the "To-From" section shall be produced. The remaining material shall be redacted.

> (11). August 25, 2000 Memo from Tanenhaus to
> Suarez (OPRA0015)

This memo attaches the August 25, 2000 draft response letter to Stanton. The memo is a duplicate of AG198 – 199 and does not have to be produced.

> (12). March 20, 2001 Memo from Tanenhaus to Mary
> Louise Burke, Asst. Director, DGE with
> attached two pages (OPRA16-18)

This memo attaches an update of Indian issues for the Department's Briefing Book (FY2001). Defendant claims the memo is protected by the attorney-client and deliberative process privileges. The March 30, 2001 memo and attachment is protected by the attorney-client privilege because it addresses legal advice or opinions regarding Indian issues related to the Indian Gaming Regulatory Act, 25 U.S.C. §2701 et. seq. (1988). The document is also protected by the deliberative process privilege because it addresses the State's deliberations and strategy

regarding ongoing relevant developments. The State's interest in preparing concise and timely summaries of relevant issues, developments and strategies outweighs plaintiff's interest in disclosure of the document.

(13). November 19, 2001 Memo from Suarez to John Hall, AAG (OPRA19-20)

This memo duplicates AG237-238 discussed _supra_ and does not have to be produced.

(14). September 4, 2002 Memo from Auriemma to D. Samson, Attorney General (OPRA0024-25)

This memo addresses an August 13, 2002 letter from Stanton again inquiring about the State recognition issue. Defendant claims the document is protected by the attorney-client and deliberative process privileges. The Court agrees the document is attorney-client privileged as it contains legal advice and opinions. The document is also protected by the deliberative process privilege as it addresses how the Division and Department should address Indian recognition issues. Since the memo contains a detailed discussion of the State's strategic thinking, the State's interest in confidentiality outweighs plaintiff's interest in production.

(15). January 7, 2003 Memo from Auriemma to Hutcheon (OPRA0026)

This memo addresses Stanton's August 13, 2002 letter. This memo is not protected by the attorney-client privilege as it does not address the substance of legal opinions or advice. The

memo is protected by the deliberative process privilege as it addresses how to respond to Stanton. Since the memo does not contain information germane to the relevant issues in the case, the State's interest in confidentiality outweighs plaintiff's interest in disclosure.

E.    Miscellaneous

The binder of documents reviewed in camera contains different types of documents that are not clear as to whether they were already produced. Although it is likely the documents have already been produced, for completeness sake the Court will address the documents.

(1). AG328 -329 - Copy of AB-2292. This AB is not privileged and shall be produced.

(2). AG330 - 332 - December 14, 2001 letter from Suarez to Stanton. This letter released to the public is not privileged and shall be produced.

(3). AG368 - 371 - January 18, 2002 letter from plaintiff to R. Lee Fleming. This non-privileged letter shall be produced.

(4). AG373 -374 - January 7, 2002 letter from plaintiff to Assistant Secretary - Indian Affairs. This non-privileged letter shall be produced.

(5). AG375 -376 - February 8, 2002 letter from Acting Director, Office of Tribal Service, Bureau of Indian Affairs, U.S. Dept. of the Interior. This non-privileged letter shall be produced.

(6). AG377 - 378 - June 10, 2002 letter from Tanenhaus to Rita Souther. This non-privileged letter shall be produced.

(7). AG379 – 380 – January 24, 2002 letter and
June 10, 2002 fax cover sheets. These
irrelevant pages do not have to be produced.

(8). AG432 – October 15, 2002 email from John
Bender to Michael Haas. This non-privileged
email shall be produced. The email does not
address legal issues and does not reveal any
deliberative discussions.

(9). AG465 – Draft Assembly Substitute No. 2292 –
This draft legislation is not privileged and
shall be produced.

(10). December 2, 2002 Email from Lori Dawes to
Michael Haas (AG470 – 471)(Duplicates)

This email summarizes Haas's phone call with Rita Souther
from the Bureau of Indian Affairs. The email is not privileged
because it simply summarizes the discussion with Souther. No
legal advice or opinions are addressed and the memo is not
deliberative in nature. The email shall be produced.

(11). December 5, 2002 Email from Gary Ehrlich to
Accurso, et al. (AG472)

This email addresses AB-2992. The email is privileged
because it relays legal advice. The email is also protected by
the deliberative process privilege because it addresses
deliberations regarding proposed changes to A-2292 and the
positions of the Division and Department. Since the email does
not contain materially important information to plaintiff's
case, the State's interest in confidentiality outweighs
plaintiff's interest in publication.

(12). <u>Assembly Substitute 2292 (AG473 - 474)</u>

This proposed substitute bill is not privileged and shall be produced.

(13). <u>February 20, 2002 Declaration of Mark M. Gould (AG501-505)</u>

This Declaration is not privileged and shall be produced.

(14.) <u>June 9, 2008 Email from Nina Wells to Rowena Madden (AG906)</u>

This email sent to the Secretary of State provides comments regarding "Draft 6 of Executive Order from Clarke Bruno." The email is not protected by the attorney-client privilege because it is not sent by, to or at the request of an attorney. The email is classic deliberative process privileged material as it addresses drafts of a proposed Executive Order. The State's paramount interest in keeping communications of this type confidential outweighs plaintiff's interest in publication.

(15). <u>August 18, 2013 Email from Lewis Scheindlin to Stephen Finkel (AG974 – 976)</u>

In these emails Finkel cites to February 2011 emails regarding the tribal recognition issue. The email is protected by the attorney-client privilege as it contains conversations amongst attorneys regarding their legal opinions and conclusions regarding issues related to tribal recognition.

(16). <u>January 14, 2013 Email from David Rebuck to Mary Jo Flaherty and January 9, 2013 Email from Flaherty to Rebuck (OPRA35)</u>

These emails concern background materials for a meeting with plaintiff. No legal advice or opinions are exchanged so the attorney-client privilege is not applicable. Further, the deliberative process privilege is not applicable because no deliberations are discussed. These emails shall be produced.

(17). <u>Additional Miscellaneous Documents</u>

The Court assumes, but is not certain, that all of the documents in its binder after OPRA26 and before OPRA35 have been produced. (These pages are not numbered). If not, the documents shall be produced as they are not privileged. These include: January 7, 2013 fax cover sheet, August 13, 2012 Stanton letter to McIntyre and Suarez, December 14, 2001 letter from Suarez to Stanton, September 9, 1992 letter from M. Efstratiados to R. Hart, AB2292, July 29, 2002 fax cover sheet, Senate Concurrent Resolution 104, Senate Concurrent Resolution 73, Assembly Concurrent Resolution, 303, July 22, 2002 letter from plaintiff to Stanton, July 15, 2002 letter from Stanton to M. Gould, June 15, 2001 letter from Stanton to J. Farmer, and August 10, 1998 letter from Stanton to P. Verniero.

(18). <u>December 3, 1999 Draft letter from Deputy Attorney General to D. Soaries, Secretary of State (AG146 – 158, 161 – 173)</u>

This is a draft letter to the Secretary of State regarding whether plaintiff and two other tribes were officially recognized as tribes of the State of New Jersey. The draft

contains legal opinions and advice and, therefore, is privileged. At this time, the Court does not know if a final version of this letter was sent and who were the final recipients. Defendant is directed to determine if the letter was finalized and sent out. If yes, a copy shall be sent to the Court to determine what portions of the draft and/or final letter should be produced, if any.

Conclusion

For all the foregoing reasons, defendant's Motion for Protective Order is GRANTED in part and DENIED in part. An appropriate accompanying Order was entered on September 15, 2017 [Doc. No. 76].


/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: September 19, 2017